# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel TONY MOORE, | |
| Petitioner, | No. 13 C 1117 |
| v. | Judge James B. Zagel |
| RICK HARRINGTON, Warden, | |
| Respondent. | |

## MEMORANDUM OPINION AND ORDER

Tony Moore, convicted in state court of first degree murder and serving a fifty-five year sentence, seeks a writ of habeas corpus after his appeals and post-conviction petitions were denied.

The trial testimony came from several persons both prosecution and defense witnesses. Some identified Moore as a shooter who inflicted a fatal wound on Michael Robinson and some said Moore was not the shooter.

The prosecution witnesses:

1. Cindy "Smith" Richardson, looking out her front door, saw Moore pointing a gun at Robinson who was standing against a fence -- these were the only two persons she saw outside her home. She saw Moore enter a white Cadillac owned by one of her neighbors, Cardnel Dawson, who was Moore's brother-in-law. She had never seen Moore on her block before that night and did not know that he was married to the sister of her neighbor.

2. Lawanda "Sellers" saw Moore and Robinson speaking to each other, again the only two on the street. She saw Moore pull out a gun and shoot at Robinson who ran away. Moore fired three more shots as Robinson fled. She recognized Moore but did not know

his name until later after speaking with neighbors. She said Moore was wearing a striped shirt and black jeans. (Cindy Smith Richardson said it was a striped shirt and shorts.) Sellers did speak with police that night but did not tell them that Moore was the shooter because she did not want to get involved.

3. Cindy Smith Richardson's son Dwight "Neal" was a block away when he heard the gunshots and then saw Robinson running to get away. He saw Moore following Robinson with a gun in his hand. He recognized Moore (he said wearing a white shirt and blue shorts) but did not know his name.

Robinson was shot in his left buttock, one bullet went into the colon, severed a vein and wound up in the abdominal wall -- all consistent with being shot from behind as he ran away.

That night of July 29, 2005 the police had a suspect, Gregory Randle, who was shown to Smith and Neal who said Randle was not the shooter. Smith was not interviewed before or after the show-up with Randle. Neal did describe the shooter but did not give a name. Sellers, when interviewed, did not provide a detailed description of the shooter.

The following day police talked to Dennis Munoz, Robinson's brother. Not present at the shooting himself, Munoz told police he had heard Moore was the shooter.

On August 16 Smith was shown a photo array which included Moore and she identified him as the shooter. On August 30 police arrested Moore at his home. Behind the house was a parked white Cadillac. Later that day Smith and Neal picked Moore out of a lineup. The next day Sellers did the same.

The defense witnesses:

1. Moore himself testified that he was riding, with his brother in law Cardnel Dawson, in Brian Steven's black Chrysler at the time of the shooting. They went first to a liquor

store and then to Dawson's home.  Just after parking they heard gunshots, climbed back into the car and drove away.

2. Stevens testified that after hearing gunshots, he saw a man running away -- the man had a white shirt and jeans.  Stevens, who backed up Moore's version, visited Moore weekly after his arrest, and Stevens had not gone to the police with this information.

3. Cardnel Dawson also supported Moore's version of events but did not go to police with his information and he, like Stevens, visited Moore on multiple occasions at the jail.

4. Stephanie Barnes saw Moore in the black Chrysler and saw the car drive off a minute or so before the gun went off.  She too refused to speak to an investigator who came to her house nor did she contact police.

5. Two other witnesses, Tony Dawson (another Moore brother-in-law) along with Seller's son Terrell, both testified that they saw the shooting and the shooter was not Moore.  These two did not tell anyone that Moore was not the shooter until trial.

The jury heard all these witnesses and believed the prosecution witnesses and did not believe the defense witnesses.  They were entitled to do so.  The principle reason that Moore gives for the proposition that no reasonable jury could believe the prosecution witnesses is that the evidence was inherently contradictory and patently preposterous.  There was no contradiction between the witnesses save their description of clothing which a jury could decide was a simple mistake after witnesses saw a shocking event.  That a witness was reluctant to speak to police for fear of involvement in the incident is reasonable in the context of the case.  Moreover, the jury weighed the testimony of two sets of witnesses and found the defense witnesses (including defendant) to be unworthy of belief.  The fact that not one of them came forward to offer evidence of Moore's innocence until the day of trial could allow a jury to conclude that a false evidence (including Moore's own testimony) was offered.  Two of the exonerating witnesses

3

were frequent visitors of Moore at the jail. The defendant need never offer evidence to exonerate himself, but if he chooses to offer evidence which a jury could regard as untruthful and manufactured, it is within the jury's right to conclude that false evidence, knowingly offered by defendant, is indicia of guilt.

The Appellate Court, in affirming the conviction, did not act in contravention of Supreme Court precedent. The Supreme Court has instructed that sufficiency of evidence is, on appeal, judged by viewing the evidence in the light most favorable to the prosecution and determining that any rational trier of fact *could* have found the element of the offense proved beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

There were three witnesses who testified that Moore murdered Robinson. Moore says all three are completely unreliable because they did not immediately identify Moore as the shooter. It is true that all three could be, as Moore argued on appeal, basing their testimony not on what they observed but rather upon street rumor, which can be inferred from the failure of each to make an immediate identification of Moore. But there is no firm rule that belated identification discredits a witness. The jury is duty bound to consider whether a late identification is trustworthy in light of all the circumstances. Here there was a reasonable basis for delay in identification. Smith had never before seen Moore; Sellers and Neal had seen him rarely. Moore testified that he did not reside with his wife who lived near the scene and visited about once a week. The jury was entitled to believe the prosecution witnesses and they did so within the mandate of *Jackson v. Virginia.*

Moore argues that he was ineffectively represented when his attorney did not exclude Regina Avery from the jury. In the end of discussion with the court about this jury, defense counsel neither asked for a challenge for cause nor exercised an available peremptory challenge

to keep Avery off the jury. Effectiveness of counsel is assessed with deference to the judgment of defense counsel.[1]

On voir dire Avery answered that she had been the victim of a non-violent crime which "could" affect her ability to be fair because there are just so many criminals out there. She said she would do her best even though she had a brother-in-law murdered by a killer not yet arrested. Then she mentioned that her boyfriend was a Chicago Police Officer and said that it might affect her ability to be fair. Finally she did say she would, to the best of her ability, judge the case based on the facts and the law.

Courts generally accept the proposition that a juror who promises to do her best to be fair is fair. Judicial acceptance of such jurors is based not only on the answer in the transcript but on the impression created by the juror's demeanor in court. The judge himself raised the question of Avery's suitability and asked counsel for his views. The prosecutor then said "I think she was rehabilitated during your questioning [Transcript pp. 39-50] and also during [defense] counsel's questioning." [Transcript pp. 178-180] It is clear from the colloquy that both the judge and defense counsel thought Avery was not a suitable candidate for exclusion for cause. Indeed, during jury selection when court and counsel discussed Avery, the defense counsel interjected "Just for the record, Judge, on Ms. Avery I did not make a motion for cause. I didn't think I had a ground because…she said she would try to be fair. But I think Ms. Evans clearly when I asked her she said that she could not be fair. I think that's the distinction." [Transcript U195-96]

This is clearly a defense counsel making a professional judgment, and there is no showing that his judgment fell below the customary standard by which such actions are judged.

---

[1] One of the ways to measure the quality of judgment in circumstances like these is to ask the question whether the juror who would replace the excused juror might be worse for the defendant than the one who is accepted. We are given no information about the general composition of the venire and the order of voir dire examination so we can only determine whether this juror was so bad that she ought to have been excluded no matter how defense hostile the rest of the venire might have been. This is very unlikely to be the case. All one can infer from the transcript was that defense counsel was clear in his view that some jurors were clearly wrong for his case.

Lastly, as the Appellate Court noted, no attempt was made here to show that there was prejudice to Moore resulting from the seating of juror Avery. The judgment of the Appellate Court on this point is not contrary to Supreme Court precedent.

What remains of this federal challenge to a state court judgment is the conduct of police in arresting Moore with insufficient cause which led in turn to a line-up. The arrest was based on Smith's identification of Moore from a photo array.

Defense counsel did file a motion to quash the arrest and the subsequent lineup identifications of him as the shooter. The defense also challenged the pre-arrest photo array. His point was that Smith's verbal description of the shooter, given before the photo array, was inconsistent with Moore. The trial court found that the identification from the photo array, two weeks after the shooting, was enough probable cause for arrest. Moore's attack on the state court judgment here is based on the incorrect assertion that defense counsel did not attack the validity of the photo array identification. But defense counsel did and the claim that appellate counsel should have challenged trial counsel's failure to raise an issue was not based on fact.

There is no significant federal right to be vindicated in this case. The substantial showing of a denial of constitutional right is not made in this case. What Moore received was a fair trial in a case where the best possible defense was offered, fairly considered and defeated by the prosecution's evidence. The state court rulings were objectively reasonable and a certificate of appealability is not granted. Civil case terminated.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 8, 2013